***EFILED***
Case Number 2026LA000491
Date: 4/2/2026 1:51 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| S.M. by and through<br>her next friend, MISTY SCOTT;<br>MISTY SCOTT and; X.G. by and through her<br>next friend, MISTY SCOTT<br>     Plaintiffs,<br>v.<br>NORFOLK SOUTHERN RAILWAY COMPANY<br>And NORFOLK SOUTHERN CORPORATION;<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2026LA000491<br><br>Case No. 26- |

## COMPLAINT

COMES NOW S.M. and X.G. by and through their next friend and mother, MISTY SCOTT and

MISTY SCOTT in her personal capacity and, by and through their attorneys Morgan Scroggins

and the Scroggins Law Office Ltd., and in support of their Complaint asserted against

NORFOLK SOUTHERN RAILWAY COMPANY ("Defendant Norfolk Company") and

NORFOLK SOUTHERN CORPORATION ("Defendant Norfolk Corp.") (collectively

"Defendants"), states the following:

### I.    JURISDICTION AND VENUE

1.    This action arises from Defendant Norfolk Company's and Defendant Norfolk Corp.'s

conduct and omissions which occurred on their property located on a railway near 2901

Missouri Avenue, Granite City, Illinois, which caused injuries to the Plaintiffs in

Madison County, Illinois.

2.    Plaintiff S.M. is an Illinois citizen with a domicile in Granite City, Illinois.

3.    Plaintiff X.G. is an Illinois citizen with a domicile in Granite City, Illinois.

4.    Plaintiff Misty Scott is an Illinois citizen with a domicile in Granite City, Illinois.

Page 1 of 37

EXHIBIT A

5. Defendant Norfolk Company is an incorporated entity who is not registered to do business in the state of Illinois.

6. Defendant Norfolk Company is in the business of transportation via railway and conducts business in the State of Illinois.

7. Defendant Norfolk Corp. an incorporated entity who is not registered to do business in the state of Illinois.

8. Defendant Norfolk Corp. is in the business of transportation via railway and conducts business in the State of Illinois.

9. This Complaint alleges theories of relief arising from Negligence, which falls within this Honorable Court's general jurisdiction.

## II.    FACTUAL BACKGROUND APPLICABLE TO ALL DEFENDANTS AND PLAINTIFFS

10. At all times relevant in this complaint Defendants owned the railway located around 2901 block of Missouri Ave., Granite City, Illinois, known as the AO Smith New Yard (the "Rail Yard").

11. The Rail Yard is situated in the middle of a residential area of Granite City, Illinois, dividing the community and separating residential neighborhoods from public parks, schools, and recreational facilities.

12. On April 5, 2024, S.M. was 13 years of age.

13. On April 5, 2024, X.G. was 12 years of age, and is a half-sister to S.M.

14. On April 5, 2024, C.R. was 13 years of age and a friend visiting with S.M. and X.G.

15. On April 5, 2024, a Friday, the three children (collectively "Children") were at 111 Wilson Park Lane, Granite City, Illinois 62040 ("Wilson Park Residence"), after walking home after school.

16. On that date at time, the Children sought to engage in roller skating.

17. Between the Wilson Park Residence and the Granite City Soccer Complex lies the Rail Yard, which, on information and belief, is owned by Defendants.

18. The Rail Yard cut through or around several residential neighborhoods.

19. The most direct and shortest pedestrian route between 111 Wilson Park Lane and the Granite City Soccer Complex led the children across and through the Rail Yard. This path is frequented by both adult and children pedestrians in their travels.

20. Defendants were aware of the route illustrated in paragraphs 17-19 prior to April 5, 2024.

21. The Rail Yard around the 2901 block of Missouri Avenue, in Granite City, Illinois does not have any appreciable fences to mitigate or otherwise frustrate the foot traffic of the nearby population.

22. The Rail Yard around the 2901 block of Missouri Avenue, in Granite City, Illinois, does not have any appreciable no trespassing signs to mitigate or otherwise frustrate the foot traffic of the nearby population from Circle Drive.

23. Defendants, through their actions and omissions, closed or blocked vehicular and pedestrian crossings located to the north and south of the Rail Yard, which previously permitted community members to safely cross the railroad tracks dividing the town. The closure of these alternative crossings left residents with no reasonable alternative but to cross through or over the Rail Yard.

24. On the opposite (southern) side of the railroad tracks, immediately accessible to anyone descending from the Rail Yard to street level, Defendants maintained and permitted the use of a set of brightly painted, permanently installed stairs designed to allow persons to descend from the elevated rail yard to ground level. The presence of these stairs constituted an open invitation to pedestrians to use the Rail Yard as a through route.

25. Defendants maintained a camera affixed atop a telephone pole at the northern end of the Rail Yard to monitor and record pedestrian and other activity within and around the Rail Yard.

26. Defendants employed railroad police officers and/or security personnel whose duties included monitoring trespassing traffic in the Rail Yard area.

27. Pedestrians, including children, frequently passed over the Rail Yard when attempting to go from one neighborhood to another which the Rail Yard intersects—specifically around the 2901 block of Missouri Ave., Granite City, Illinois 62040.

28. Prior to and on the date of the incident, it was a common, regular, open, and well-known practice for members of the public, including children, to cross through the Rail Yard.

29. Defendants, given their equipment, employees, and railroad police had actual and constructive knowledge of this practice, having observed and monitored such crossings for an extended period through its surveillance camera system and railroad police personnel.

30. Defendants, given their equipment, employees, and railroad police were aware that pedestrians, including children, regularly and habitually traversed the Rail Yard.

31. On April 5, 2024, to engage in roller skating, the Children elected to walk to Granite City Soccer Complex, located near 2300 W 25th St, Granite City, IL 62040, to obtain a ride from C.R.'s mother.

32. While travelling to the Granite City Soccer Complex, the Children had to cross at the Rail Yard which were owned by Defendants.

33. Although most of the Rail Yard was vacant at time of the Children's crossing, a cut of cars located near the 2901 block of Missouri Ave, Granite City, Illinois 62040, had an stationary and standing group of rail cars which blocked the children's pathway to their mother's location.

34. Upon reaching the stationary cars, S.M., X.G., and C.R. collectively waited 10-15 minutes before attempting to cross the tracks with the inactive train.

35. While the Children waited, the train did not move, no workers were present and, no other conditions were present which would indicate that the locomotive with its rail cars were currently being used.

36. The children elected to cross the stationary train by climbing across the platform built into the end of a tank car which was a railcar that was part of the train blocking their path.

37. C.R. first crossed between the railcars without any injury. X.G. followed without injury.

38. Following X.G.'s successful crossing, S.M. mounted the railcar to begin the crossing. Unfortunately, without notice, the railcars she was crossing lurched into movement causing S.M. to lose her footing and fall between the moving cars.

39. Prior to the train's movement, the children heard no audible warnings, including but not limited to the sounding of a locomotive whistle or horn or the ringing of a bell — that the train was about to move.

40. Prior to the train's movement, no employees, crew members, conductors, engineers, brakeman, or other railroad personnel of the Defendants were visibly present in the immediate vicinity of the tank cars where S.M. was attempting to cross, and none were positioned at the leading end of the movement to ensure the path was clear of persons.

41. The sudden movement of the train caused S.M. to fall and, upon hitting the ground, have her legs run over by the railcar(s).

42. Then and there, S.M. suffered severe and catastrophic physical and emotional injuries which will last her entire life.

43. After being run over by the locomotive and/or its railcars, S.M.'s legs were stuck in a switch on the rails.

44. After S.M. was run over by the locomotive and/or its railcars, X.G. and/or C.R. called emergency professionals and S.M.'s mother, Misty Scott.

45. After being contacted, emergency professionals and Misty Scott and emergency professionals responded to the scene.

46. While emergency professionals and Misty Scott were attending to S.M. a second train began to approach S.M. whose legs were stuck in the rails.

47. Then and there, then and there, MISTY SCOTT, mother to S.M., suffered emotional distress, including but not limited to Post Traumatic Stress Disorder.

48. The approaching train necessitated the amputation of both of S.M.'s legs above knee level.

49. As a result of the accident, S.M. suffered tremendous pain and suffering and will continue to suffer throughout the remainder of her life.

50. As a result of the accident, S.M. had to undergo numerous medical operations which cumulatively exceed $50,000.00 in costs.

51. As a result of the accident, S.M. will continue to need medical care in the future, an expense estimated to be in excess of $50,000.00 in costs.

52. As a result of the accident, S.M. a child, will need progressively larger leg prosthetics, which will cost an amount exceeding $50,000.00 over her lifetime.

53. At the time of the accident, S.M. was in the eighth grade. She was an active junior high school cheerleader, basketball player, dancer, and track athlete. As a result of her injuries, she has been permanently deprived of the ability to participate in these and all physical activities.

54. As a result of the accident, X.G., suffered emotional distress, including but not limited to Post Traumatic Stress Disorder, after watching her sister run over by a train.

55. At all relevant points, X.G. was at risk of the moving locomotive and could see S.M. immobilized on the train tracks while being run over by the train.

56. At all relevant points, X.G. could see S.M. immobilized on the train tracks while a second locomotive and its railcars advanced towards S.M. threatening S.M's life.

57. On information and belief, Defendants employ engineers, conductors, and other employees who are tasked with ensuring the tracks are clear of obstacles before a train is allowed to move.

58. On information and belief, Defendants employ engineers, conductors, and other employees who are tasked with ensuring that pedestrians are not on the railways and

safe from severe injuries and death which can be caused by coming into contact with a moving locomotive and its railcars.

59. On information and belief, on April 5, 2024, Defendants had on duty engineers, conductors, and/or other employees who were tasked with ensuring that Rail Yard was clear of obstacles which may impede the movement of Norfolk Southern equipment.

60. On information and belief, on April 5, 2024, Defendants had on duty engineers, conductors, and/or other employees who were tasked with ensuring the Rail Yard was clear of pedestrians who could suffer severe injury and death from contact with a locomotive and its railcars.

61. On information and belief, on April 5, 2024, Defendants' employees saw, or should have seen, the Children near the train for an extended period of time.

62. On information and belief, despite witnessing the Children on April 5, 2024, Defendants' employees took no actions to safeguard the children from crossing the stationary train.

63. On information and belief, despite witnessing the Children on April 5, 2024, Defendants' employees took no actions to have the children to leave the Rail Yard.

64. On information and belief, despite witnessing the S.M. and emergency professionals on the Rail Yard on April 5, 2024, Defendants employees engaged in conduct which caused a subsequent locomotive and railcars to proceed to further threaten the safety of the children.

### III. THEORIES OF RELIEF

**COUNT I: NEGLIGENCE (KNOWN/FREQUENT TRESSPASSER) ASSERTED BY S.M. AGAINST NORFOLK COMPANY and NORFOLK SOUTHERN CORPORATION**

COMES NOW S.M. by and through her next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count I asserted against the Defendants jointly, states the following:

65. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

66. On April 5, 2024, Defendants owned the Rail Yard located around the 2901 block of Missouri Ave., Granite City, Illinois 62040.

67. The Children attempted to cross the Rail Yard on April 5, 2024, through the path referenced in paragraphs 17-19 above.

68. Defendants were aware of a path crossing the Rail Yard. around the 2901 block of Missouri Ave., Granite City, Illinois 62040, which was frequented by pedestrians and children while traversing between neighborhoods. The path is referred to in paragraphs 17-19 above.

69. Hence, Defendants owed the S.M a duty of reasonable care to prevent harm to S.M. while passing through the path described in paragraphs 17-19 above.

70. On April 5, 2024, around 6:30 p.m., the Children were attempting to traverse the Rail Yard located near the 2901 block of Missouri Avenue, Granite City, Illinois 62040, on the path referenced in paragraphs 17-19 and 67-68 above.

71. Upon approach, there was an inactive train (for an extended period of time) with railcars on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040.

72. S.M., X.G. and later C.R. waited approximately 15 minutes before attempting to cross the inactive train.

73. On information and belief, Defendants' employees were aware of the presence of the minor children directly or through the use of surveillance equipment.

74. Defendants' breached their duty of care owed to S.M. by failing to do the following:

   a. Erect barricades or fences near the well path referenced in area referenced in paragraphs 55 and 58 above.

   b. Alternatively, to establish and utilize visual monitoring to identify when people were attempting to cross the area referenced in paragraphs 17-19 and 67-68 above *and dispatch appropriate professionals to prevent the crossings when identified.*

   c. Failed to provide any audible warning — including but not limited to the sounding of a locomotive whistle, horn, or bell — before causing or permitting the train to move, when it knew or should have known that persons were present on or near the train;

   d. Failed to cause a crew member, brakeman, conductor, or other authorized employee to be positioned at the leading end of the moving train to observe and protect against the presence of persons on, near, or between the railroad cars before initiating movement;

   e. Caused or permitted the train to move suddenly and without warning while persons were on or in close proximity to the train cars;

   f. Failed to install or maintain adequate warning signs, lights, signals, or other devices to alert pedestrians that trains may move without warning;

   g. Closed or caused the closure of alternative pedestrian crossings to the north and south of the Rail Yard, thereby channeling pedestrian traffic — including children

— through the Rail Yard with no safe alternative route, while failing to make the Rail Yard safe for such use;

h. Maintained and permitted the use of brightly painted stairs on the southern side of the tracks that affirmatively invited and facilitated pedestrian crossing of the Rail Yard, while simultaneously failing to ensure such crossings could be made safely;

i. Failed to implement or enforce reasonable policies and procedures to protect known trespassers — and particularly known child trespassers — from train movements within the Rail Yard;

j. Was otherwise careless and negligent in the ownership, operation, management, and maintenance of the Rail Yard and the trains operating therein.

75. As a result of Defendant's breach, the Children attempted to cross a railcar of the inactive locomotive present on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, on the path referenced in paragraphs 17-19 and 67-68 above.

76. C.R. first advanced through the crossing without any apparent injury or risk. Then X.G. began crossing the railcar.

77. Following X.G. upon the railcar, S.M. mounted the railcar to begin the crossing.

78. After beginning the crossing, the train began to move, which caused the platform on which S.M. was crossing to lurch suddenly.

79. The sudden movement of the stairs caused S.M. to fall and, after hitting the ground, had her legs run over by the railcar(s).

80. Then and there, as a direct and proximate result of the Defendants' breach, S.M. suffered severe and catastrophic physical and emotional injuries which will last her entire life.

81. After being ran over by the locomotive and/or its railcars, S.M. was stuck in a switch on the rails.

82. After being contacted, emergency professionals responded to the scene.

83. While emergency professionals were attending S.M. a second train began to approach S.M. who was stuck on the rails.

84. The approaching train necessitated the amputation of S.M.'s legs above the level of her knees.

85. As a direct and proximate result of the Defendants' breach, S.M. suffered tremendous pain and suffering and will continue to suffer throughout the remainder of her life.

86. As a direct and proximate result of the Defendants' breach, S.M. had to undergo numerous medical operations which cumulatively exceed $50,000.00 in costs.

87. As a direct and proximate result of the Defendants' breach, S.M. will continue to need medical care in the future at an increased rate, an expense estimated to be in excess of $50,000.00 in costs.

88. As a direct and proximate result of the Defendants' breach, S.M. will regularly need new leg prosthetics, which will cost an amount exceeding $50,000.00 over her lifetime.

89. As a direct and proximate result of Defendant's breach, S. M. will experience lost earning capacity and impaired ability to engage in gainful employment throughout her life;

90. As a direct and proximate result of Defendant's breach, S. M. will experience a loss of the ability to engage in physical activities, sports, cheerleading, dance, and other pursuits she enjoyed prior to the incident

WHEREFORE Plaintiff prays this Honorable Court:

    A. GRANT Count I of Plaintiff's Complaint asserted against the Defendants jointly.

    B. AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

    C. AWARD Plaintiff her costs of suit.

    D. Order other Further relief this Honorable Court deems just and proper.

## COUNT II: NEGLIGENCE (CHILD TRESSPASSER/ATTRACTIVE NUISANCE) ASSERTED BY S.M. AGAINST NORFOLK COMPANY and NORFOLK SOUTHERN CORPORATION

COMES NOW S.M. by and through her next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count II asserted against the Defendants jointly, states the following:

91. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

92. On April 5, 2024, Defendants owned the Rail Yard around the 2901 block of Missouri Ave., Granite City, Illinois 62040.

93. On April 5, 2024, an apparently inactive train was present on the Rail Yard around the 2901 block of Missouri Ave., Granite City, Illinois 62040.

94. Defendants were aware of a path crossing the Rail Yard around the 2901 block of Missouri Avenue, Granite City, Illinois 62040, referenced in paragraphs 17-19 and 67-68 above, which children would frequent while travelling between neighborhoods.

95. Defendants were aware that their equipment presented risk of catastrophic injury and death to pedestrians attempting to cross the path referenced in paragraphs 17-19 and 67-68 above given:

    a. The size and power of a moving train which can start with no advanced warning and;

    b. Certain risks exist to pedestrians and children when attempting to pass over or through trains without proper training.

96. Defendants are aware that minor children are likely to be injured by the risks referenced in the preceding paragraph since children are unlikely to appreciate the same,

97. Defendants could eliminate the risks referenced above by erecting fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

98. The costs in implementing such minor fixes are insignificant in light of risk of lost limb or life to minor children.

99. Hence, Defendants had a duty of reasonable care owed to S.M. and other children to erect fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in paragraphs 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

100. Hence, Defendants has a duty of reasonable care owed to S.M. and other children to protect them from the dangers presented in paragraph 95 above.

101. Defendants breached their duty of care owed to S.M. by failing to do the following:

a. Erect barricades or fences near the well path referenced in area referenced in paragraphs 55 and 58 above.

b. Alternatively, to establish and utilize visual monitoring to identify when people were attempting to cross the area referenced in paragraphs 17-19 and 67-68 above *and dispatch appropriate professionals to prevent the crossings when identified.*

c. Failed to provide any audible warning — including but not limited to the sounding of a locomotive whistle, horn, or bell — before causing or permitting the train to move, when it knew or should have known that persons were present on or near the train;

d. Failed to cause a crew member, brakeman, conductor, or other authorized employee to be positioned at the leading end of the moving train to observe and protect against the presence of persons on, near, or between the railroad cars before initiating movement;

e. Caused or permitted the train to move suddenly and without warning while persons were on or in close proximity to the train cars;

f. Failed to install or maintain adequate warning signs, lights, signals, or other devices to alert pedestrians that trains may move without warning;

g. Closed or caused the closure of alternative pedestrian crossings to the north and south of the Rail Yard, thereby channeling pedestrian traffic — including children — through the Rail Yard with no safe alternative route, while failing to make the Rail Yard safe for such use;

    h.   Maintained and permitted the use of brightly painted stairs on the southern side of the tracks that affirmatively invited and facilitated pedestrian crossing of the Rail Yard, while simultaneously failing to ensure such crossings could be made safely;

    i.   Failed to implement or enforce reasonable policies and procedures to protect known trespassers — and particularly known child trespassers — from train movements within the Rail Yard;

    j.   Was otherwise careless and negligent in the ownership, operation, management, and maintenance of the Rail Yard and the trains operating therein.

102. As a result of Defendant's breach, the Children attempted to cross a railcar of the stationary train present on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, blocking the path referenced in paragraphs 17-19 and 67-68 above.

103. C.R. first advanced through the crossing without injury and was followed by X.G. who also crossed the train without injury.

104. Following X.G., S.M. mounted the standing tanker railcar to begin the crossing.

105. After beginning the crossing, the train unexpectedly moved which caused the platform on which S.M. was crossing to lurch suddenly.

106. The sudden movement of the railcar caused S.M. to fall and, after hitting the ground, had her legs run over by the railcar(s).

107. Then and there, as a direct and proximate result of the Defendants' breach, S.M. suffered severe and catastrophic physical and emotional injuries which will last her entire life.

108. After being ran over by the locomotive and/or its railcars, S.M.'s legs were crushed into the rails below her.

109. After being contacted, emergency professionals responded to the scene.

110. While emergency professionals were attending S.M. a second train began to approach S.M. who was stuck in the rails.

111. The approaching train necessitated the amputation of S.M.'s legs at a point above both of her knees.

112. As a direct and proximate result of the Defendants' breach, S.M. suffered tremendous pain and suffering and will continue to suffer throughout the remainder of her life.

113. As a direct and proximate result of the Defendants' breach, S.M. had to undergo numerous medical operations which cumulatively exceed $50,000.00 in costs.

114. As a direct and proximate result of the Defendants' breach, S.M. will continue to need medical care in the future at an increased rate, an expense estimated to be in excess of $50,000.00 in costs.

115. As a direct and proximate result of the Defendants' breach, S.M. will regularly need new leg prosthetics, which will cost an amount exceeding $50,000.00 over her lifetime.

116. As a direct and proximate result of Defendant's breach, S. M. will experience lost earning capacity and impaired ability to engage in gainful employment throughout her life.

117. As a direct and proximate result of Defendant's breach, S. M. will experience a loss of the ability to engage in physical activities, sports, cheerleading, dance, and other pursuits she enjoyed prior to the incident

WHEREFORE Plaintiff prays this Honorable Court:

E.    GRANT Count II of Plaintiff's Complaint asserted against the Defendants jointly.

F.    AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

G.    AWARD Plaintiff her costs of suit.

H.    Order other Further relief this Honorable Court deems just and proper.

## COUNT III NEGLIGENCE PER SE ASSERTED BY S.M. AGAINST NORFOLK COMPANY and NORFOLK SOUTHERN CORPORATION

COMES NOW S.M. by and through her Next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count III asserted against the Defendants jointly, states the following:

118.    Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

119.    At all times relevant, the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.*, has been in full force and effect along with additional regulations promulgated by the Federal Railroad Administration ("FRA") 49 C.F.R. Parts 200 *et seq.*

120.    The Federal Railroad Safety Act, and the following regulations promulgated by the FRA as a result, are designed to protect the public, including pedestrians and children, from the hazards inherent in railroad operations:

a.    49 C.F.R. § 218.99 — Movement of on-track equipment: This regulation requires that, when a shoving or pushing movement is made, a crew member must be positioned at the leading end of the movement to observe the intended path of movement and to communicate with the engineer, or the movement must be conducted under the protection of a signal system or other equivalent protection.

b. 49 C.F.R. Part 218, Subpart F — General Switch, Train, and Locomotive Operation: Operating rules requiring employees to maintain proper and adequate lookout before initiating train movements.

c. 49 C.F.R. § 229.129 — Audible Warning Devices: Locomotives are required to be equipped with operative audible warning devices, and railroad operating rules promulgated pursuant to federal regulations require that such devices be sounded when persons or vehicles are on or near the track.

121. S.M., X.G, and C.R. are part of the class of people intended to be protected by the Federal Railroad Administration ("FRA") 49 C.F.R. Parts 200 et seq.

122. Hence, Defendants had a duty to abide by 49 C.F.R. § 218.99, 49 C.F.R. Part 218 and , 49 C.F.R. § 229.129 for the protection of others, including the minor child S.M.

123. Defendants violated the above regulations when considering the following conduct and omissions:

a. Defendants failed to have any crew member at the leading end of the movement before initiating movement of the train.

b. Defendants failed to take adequate precautions when moving equipment in areas where persons could be endangered.

c. Defendants failed to sound any audible warning before the train started into motion.

124. As a direct and proximate result of the Defendants' breach, S.M. suffered tremendous pain and suffering and will continue to suffer throughout the remainder of her life.

125. As a direct and proximate result of the Defendants' breach, S.M. had to undergo numerous medical operations which cumulatively exceed $50,000.00 in costs.

126. As a direct and proximate result of the Defendants' breach, S.M. will continue to need medical care in the future at an increased rate, an expense estimated to be in excess of $50,000.00 in costs.

127. As a direct and proximate result of the Defendants' breach, S.M. will regularly need new leg prosthetics, which will cost an amount exceeding $50,000.00 over her lifetime.

128. As a direct and proximate result of Defendant's breach, S. M. will experience lost earning capacity and impaired ability to engage in gainful employment throughout her life.

129. As a direct and proximate result of Defendant's breach, S. M. will experience a loss of the ability to engage in physical activities, sports, cheerleading, dance, and other pursuits she enjoyed prior to the incident

130. The promulgation of 49 C.F.R. § 218.99, 49 C.F.R. Part 218 and 49 C.F.R. § 229.129 were designed particularly to protect individuals like S.M. from the specific harms suffered by S.M.

131. Defendants' violations of these federal safety regulations constitute negligence per se under Illinois law, relieving S.M. of the obligation to further establish the standard of care with respect to the specific conduct governed by these regulations.

WHEREFORE Plaintiff prays this Honorable Court:

I.    GRANT Count III of Plaintiff's Complaint asserted against the Defendants jointly.

J.    AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

K.    AWARD Plaintiff her costs of suit.

L.    Order other Further relief this Honorable Court deems just and proper.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ASSERTED BY X.G. AGAINST NORFOLK COMPANY and NORFOLK SOUTHERN CORPORATION

COMES NOW X.G. by and through her next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count IV asserted against the Defendants jointly, states the following:

132. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

133. On April 5, 2024, Defendants owned the Rail Yard around the 2901 block of Missouri Ave., Granite City, Illinois 62040.

134. The Children actually traversed Rail Yard on April 5, 2024, through the path referenced in paragraphs 17-19 above.

135. Defendants were aware of a path crossing the Rail Yard. around the 2901 block of Missouri Ave., Granite City, Illinois 62040, which was frequented by pedestrians and children while traversing between neighborhoods. The path is referred to in paragraphs 17-19 above.

136. Hence, Defendants owed the X.G. a duty of reasonable care to prevent harm to X.G. while passing through the path described in paragraphs 17-19 above.

137. Defendants were aware of a path crossing the Rail Yard around the 2901 block of Missouri Avenue, Granite City, Illinois 62040, referenced in paragraphs 17-19 and 67-68 above, which children would frequent while travelling between neighborhoods.

138. Defendants were aware that railways, locomotives and, locomotive's railcars located presented risks catastrophic injury and death to pedestrians attempting to cross the path referenced in paragraphs 17-19 and 67-68 above given:

  a. The size and power of a moving locomotive, which can start with no advanced warning and

  b. Certain risks attendant to pedestrians and children when attempting to pass over or through locomotives and/or its railcars without proper training.

139. Defendants are aware that minor children are likely to be injured by the risks referenced in the preceding paragraph since children are unlikely to appreciate the same,

140. Defendants could eliminate the risks referenced in paragraph 95 above by erecting fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

141. The costs in implementing such minor fixes are insignificant in light of risk of lost limb or life to minor children.

142. Hence, Defendants had a duty of reasonable care owed to X.G.. and other children to erect fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in paragraphs 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

143. Hence, Defendants has a duty of reasonable care owed to X.G. and other children to protect them from the dangers presented in paragraph 95 above.

144. On April 5, 2024, around 6:30 p.m., there was an inactive train (for an extended period of time) with railcars on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, which is also referenced in paragraphs above.

145. The Children were attempting to traverse the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, on the path referenced in paragraphs 55 and 58 above.

146. S.M., X.G. and later C.R. waited approximately 15 minutes at the inactive locomotive.

147. On information and belief, Defendants' employees were visually apprised of the presence of the minor children directly or through the use of equipment.

148. Defendants breached their duty of care owed to S.M. and X.G. by failing to do the following:

   a. Erect barricades or fences near the well path referenced in area referenced in paragraphs 55 and 58 above.

   b. Alternatively, to establish and utilize visual monitoring to identify when children were attempting to cross the area referenced in paragraphs 55 and 58 above *and dispatch appropriate professionals to prevent the crossings when identified.*

149. As a result of Defendant's breach, the Children attempted to cross a railcar of the inactive locomotive present on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, on the path referenced in paragraphs 55 and 58 above.

150. C.R. first advanced through the crossing without any apparent injury or risk. Then X.G. crossed between the standing railcars.

151. Following X.G. upon the railcar, S.M., X.G.'s sister, mounted the railcar to begin the crossing when the train moved causing S.M. to fall and suffer catastrophic injuries when the train rolled across her legs above her knees.

152. Then and there, as a direct and proximate result of the Defendants' breach, C.M. suffered severe and catastrophic physical and emotional injuries which will last her entire life.

153. X.G. was in close proximity to S.M. and was faced with the same dangers and/or risks which inflicted injuries up S.M. She witnessed her sister being run over by the train and saw her legs being crushed.

154. X.G. witnessed S.M. being run over by the locomotive's railcars and observed her sister suffering in excruciating pain.

155. While emergency professionals were attending to S.M. a second train began to approach S.M. who was stuck on the rails.

156. X.G. was in close proximity to S.M. while the second locomotive, and its railcars, approached S.M., who was immobile on the Rail Yard.

157. X.G. was placed danger by the second oncoming locomotive due to her proximity to S.M.

158. The approaching train necessitated the amputation of S.M.'s legs rather than allowing responding medical personnel the opportunity to save S.M.'s legs.

159. As a direct and proximate result of the Defendants' breach, S.M. suffered tremendous pain and suffering and will continue to suffer throughout the remainder of her life.

160. As a direct and proximate result of the Defendants' breach and accident, X.G., suffered emotional distress, including but not limited to Post Traumatic Stress Disorder, after

watching her sister be run over by railcar(s) and be threatened by the second

locomotive with its railcars.

WHEREFORE Plaintiff prays this Honorable Court:

M.   GRANT Count IV of Plaintiff's Complaint asserted against the Defendants

jointly.

N.   AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

O.   AWARD Plaintiff her costs of suit.

P.   Order other Further relief this Honorable Court deems just and proper.


## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ASSERTED BY MISTY SCOTT AGAINST NORFOLK COMPANY and NORFOLK CORP.

COMES NOW MISTY SCOTT (for this subsection, "Plaintiff"), by and through her attorneys

Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count IV asserted

against the Defendants jointly, states the following:

164.  Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged

herein.

165.  Here, on April 5, 2024, Defendants owned the Rail Yard around the 2901 block of

Missouri Ave., Granite City, Illinois 62040.

166.  The Children actually traversed Rail Yard on April 5, 2024, through the path referenced

in paragraphs 17-19 above.

167.  Defendants were aware of a path crossing the Rail Yard. around the 2901 block of

Missouri Ave., Granite City, Illinois 62040, which was frequented by pedestrians and

children while traversing between neighborhoods. The path is referred to in paragraphs 17-19 above.

168. Hence, Defendants owed the S.M a duty of reasonable care to prevent harm to S.M. while passing through the path described in paragraphs 17-19 above.

169. Defendants were aware of a path crossing the Rail Yard around the 2901 block of Missouri Avenue, Granite City, Illinois 62040, referenced in paragraphs 17-19 and 67-68 above, which children would frequent while travelling between neighborhoods.

170. Defendants were aware that railways, locomotives and railcars presented risk of catastrophic injury and death to pedestrians attempting to cross the path referenced in paragraphs 17-19 and 67-68 above given:

    a. The size and power of a moving locomotive, which can start with no advanced warning and

    b. Certain risks attendant to pedestrians and children when attempting to pass over or through locomotives and/or its railcars without proper training.

171. Defendants were aware that minor children are likely to be injured by the risks referenced in the preceding paragraph since children are unlikely to appreciate the same,

172. Defendants could eliminate the risks referenced in paragraph 95 above by erecting fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

173. The costs in implementing such minor fixes are insignificant in light of risk of lost limb or life to minor children.

174. Hence, Defendants had a duty of reasonable care owed to S.M. and X.G. and other children to erect fences, barricades, and/or visual monitoring to identify when children were attempting to cross the area referenced in paragraphs 17-19 and 67-68 above and dispatch appropriate professionals to prevent the crossings.

175. Hence, Defendants has a duty of reasonable care owed to S.M and X.G. and other children to protect them from the dangers presented in paragraph 95 above.

176. On April 5, 2024, around 6:30 p.m., there was an inactive train (for an extended period of time) with railcars on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, which is also referenced in paragraphs 55 and 58 above.

177. The Children were attempting to traverse the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, on the path referenced in paragraphs 55 and 58 above.

178. S.M., X.G. and later C.R. waited approximately 15 minutes at the inactive locomotive.

179. On information and belief, Defendants' employees were visually apprised of the presence of the minor children directly or through the use of equipment.

180. Defendants' breached their duty of care owed to S.M. and X.G. by failing to do the following:

    c. Erect barricades or fences near the well path referenced in area referenced in paragraphs 55 and 58 above.

    d. Alternatively, to establish and utilize visual monitoring to identify when children were attempting to cross the area referenced in paragraphs 55 and 58 above *and dispatch appropriate professionals to prevent the crossings when identified.*

181. As a result of Defendant's breach, the Children attempted to cross a railcar of the inactive locomotive present on the Rail Yard located near the 2901 block of Missouri Ave., Granite City, Illinois 62040, on the path referenced in paragraphs 55 and 58 above.

182. C.R. first advanced through the crossing without any apparent injury or risk. Then X.G. began the cross the railcar.

183. Following X.G. upon the railcar, S.M. mounted the railcar to begin the crossing when the locomotive and its railcars began to move.

184. The sudden movement of the train caused S.M. to fall and, after hitting the ground, have her legs run over by the railcar(s).

185. Then and there, as a direct and proximate result of the Defendants' breach, S.M. suffered severe and catastrophic physical and emotional injuries which will last her entire life.

186. X.G. was in close proximity to S.M. and was faced with the same dangers and/or risks which inflicted injuries up S.M.

187. After being run over by the locomotive and/or its railcars, S.M was stuck to the rails.

188. X.G. witnessed S.M. being ran over by the locomotive's railcars.

189. After being contacted by emergency professionals, the children's mother MISTY SCOTT responded to the scene.

190. While emergency professionals and MISTY SCOTT were attending S.M. a second train began to approach S.M. who was stuck on the rails.

191. MISTY SCOTT. was in close proximity to S.M. while the second locomotive, and its railcars, approached S.M., who was immobile on the Rail Yard.

192. MISTY SCOTT. was at risk of danger of the second oncoming locomotive due to her proximity to S.M.

193. The approaching train necessitated the amputation of S.M.'s legs at varying points.

194. As a direct and proximate result of the Defendants' breach, Misty Scott suffered tremendous pain and suffering while her daughter suffered horrendous injury.

195. As a direct and proximate result of the Defendants' breach and accident, then and there, MISTY SCOTT, mother to C.M., suffered the following after watching her daughter be threatened by the second locomotive with its railcars.

    c.   Severe psychological trauma and post-traumatic stress;

    d.   Anxiety, depression, and sleep disturbance;

    e.   Physical manifestations of emotional distress;

    f.   Impaired ability to function in daily life and employment;

    g.   The need for ongoing psychological and psychiatric care and treatment.

WHEREFORE Plaintiff prays this Honorable Court:

    Q.   GRANT Count V of Plaintiff's Complaint asserted against the Defendants jointly.

    R.   AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

    S.   AWARD Plaintiff her costs of suit.

    T.   Order other Further relief this Honorable Court deems just and proper.

### COUNT VI—WILLFUL AND WANTON CONDUCT ASSERTED BY S.M AGAINST NORFOLK COMPANY and NORFOLK CORP.

COMES NOW S.M. by and through her next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count VI asserted against the Defendants jointly, states the following:

196. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

197. Defendant's conduct, as described herein, rose beyond mere negligence to the level of willful and wanton misconduct, in that Norfolk Southern's acts and omissions demonstrated a conscious disregard for and utter indifference to the safety and welfare of S.M. and other pedestrians known to be crossing the Rail Yard.

198. Specifically, Defendants' willful and wanton misconduct consisted of one or more of the following:

   a. Defendants had actual knowledge, through its surveillance cameras and railroad police, that members of the public — including children — regularly crossed the Rail Yard, yet took no meaningful action to prevent such crossings or to make them safe;

   b. Defendants deliberately closed or permitted the closure of alternative pedestrian crossings located to the north and south of the Rail Yard, knowing that such closures would force pedestrians, including children, to cross through the Rail Yard, while simultaneously failing to provide any safe alternative;

   c. Defendants caused, or permitted its agents to cause, the train to move suddenly and without warning at a time when its camera system and police personnel knew, or in the exercise of any reasonable observation would have known, that members of the public were present on, near, or between the stationary cars;

   d. Despite actual knowledge of recurring pedestrian crossings, Defendants failed over an extended period of time to erect any barrier, fence, gate, or other device to

prevent such crossings, and failed to post warnings adequate to protect known crossing pedestrians from train movements;

e. Defendants maintained and permitted the existence of the brightly painted stairway on the southern bank of the tracks, which constituted an affirmative facilitation of pedestrian crossings, while simultaneously operating trains without adequate warnings or safety protocols to protect persons making such crossings.

199. As a direct and proximate result of Norfolk Southern's willful and wanton conduct, S.M. suffered catastrophic and permanent injuries, including the traumatic amputation of both legs above the knees, and all other damages described in Count I.

WHEREFORE, Plaintiff S.M., a Minor, by her Mother and Next Friend MISTY SCOTT, requests this Honorable Court:

U. GRANT JUDGMENT regarding Count VI AGAINST Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of this action.

V. GRANT Punitive damages against Defendants in excess of $100,000.

W. Order other such other and further relief as this Court deems just and proper.

## COUNT VII- NEGLIGENCE (RES IPSA LOQUITUR) ASSERTED BY S.M. AGAINST NORFOLK COMPANY AND NORFOLK CORP.

COMES NOW S.M. by and through her Next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count VII asserted against the Defendants jointly, states the following:

200. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

Page 31 of 37

201. At all times relevant hereto, the freight train that struck S.M. was under the exclusive ownership, operation, management, and control of Norfolk Southern and its agents, servants, and employees.

202. The events giving rise to this action — specifically, the sudden and unexpected movement of a stationary freight train in an area where the operator knew or should have known persons were present, without any audible warning, and without any crew member posted at the leading end of the movement — are of a character that would not ordinarily occur in the absence of negligence on the part of the entity in control of the train.

203. The train's sudden movement, which caused S.M. to be swept between the cars and suffer traumatic bilateral leg amputations, is not the type of event that ordinarily occurs absent negligent operation and control of the equipment.

204. S.M. was not contributorily negligent in any manner that caused or contributed to this incident.

205. Under the doctrine of res ipsa loquitur, the facts and circumstances of this incident give rise to an inference of negligence on the part of the Defendants, which is entitled to go to the trier of fact.

206. As a direct and proximate result of the negligence of the Defendants, as evidenced by the application of res ipsa loquitur, S.M. suffered catastrophic and permanent injuries, including the traumatic amputation of both legs above the knees, and all other damages described in Count I.

WHEREFORE, Plaintiff S.M., a Minor, by her Mother and Next Friend MISTY SCOTT, requests this Honorable Court judgment:

X.   GRANT JUDGMENT regarding Count VII of Plaintiff's Complaint asserted against the Defendants jointly.

Y.   AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

Z.   AWARD Plaintiff her costs of suit.

AA.  Order other Further relief this Honorable Court deems just and proper.

### COUNT VIII--WILLFUL AND WANTON INFLICTION OF EMOTIONAL DISTRESS ASSERTED BY X.G. AGAINST NORFOLK COMPANY AND NORFOLK CORP.

COMES NOW X.G. by and through her Next friend, Misty Scott (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count VII asserted against the Defendants jointly, states the following:

207.  Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

208.  As set forth in Count VI, Norfolk Southern's conduct constituted willful and wanton disregard for the safety of pedestrians, including children, known to be crossing the Rail Yard.

209.  Norfolk Southern's willful and wanton conduct — including moving the train without warning while aware of or recklessly indifferent to the presence of children on or near the cars — directly placed X.G. in the zone of physical danger and caused her to directly witness the catastrophic and traumatic injuries to her sister.

210.  As a direct and proximate result of Norfolk Southern's willful and wanton conduct, X.G. suffered severe and lasting emotional distress as set forth in Count VI.

WHEREFORE, Plaintiff X.G., a Minor, by her Mother and Next Friend MISTY SCOTT, requests this Honorable Court judgment:

BB.  GRANT JUDGMENT regarding Count VII of Plaintiff's Complaint asserted against the Defendants jointly.

CC.  AWARD Plaintiff an amount exceeding $50,000 in compensatory damages.

DD.  AWARD Plaintiff her costs of suit.

EE.  AWARD Plaintiff punitive damages in excess of $100,000.00.

FF.  Order other Further relief this Honorable Court deems just and proper.

## COUNT IX RECOVERY OF MEDICAL EXPENSES — PARENTAL CLAIM ASSERTED BY MISTY SCOTT AGAINST NORFOLK COMPANY AND NORFOLK CORP.

COMES NOW MISTY SCOTT (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count IX asserted against the Defendants jointly, states the following

211. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

212. As a direct and proximate result of Norfolk Southern's negligent and willful and wanton conduct, S.M., a minor, has required and continues to require extensive medical care and treatment, including emergency surgery, multiple additional surgical procedures (totaling more than six to date), hospitalization, prosthetic evaluations and fittings, physical and occupational therapy, rehabilitation, psychological care, and ongoing medical management.

213. As the parent and natural guardian of S.M., Misty Scott is legally obligated for the reasonable and necessary medical, surgical, rehabilitative, prosthetic, and other healthcare expenses incurred on behalf of her minor daughter, both past and future.

Page 34 of 37

214. As a direct and proximate result of Defendants' negligence and willful and wanton conduct, Misty Scott has incurred and will continue to incur substantial past and future medical and related expenses for the care and treatment of S.M.

WHEREFORE, Plaintiff MISTY SCOTT, Individually, requests this Honorable Court:

GG. GRANT JUDGMENT regarding Count IX of Plaintiff's Complaint against Defendants.

HH. AWARD MISTY SCOTT an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) for all past and future medical and related expenses incurred on behalf of Serenity McMillan, plus costs of this action,

II. ORDER such other and further relief as this Court deems just and proper.

## COUNT X - WILLFUL AND WANTON INFLICTION OF EMOTIONAL DISTRESS ASSERTED BY MISTY SCOTT AGAINST NORFOLK SOUTHERN COMPANY and NORFOLK CORP.

COMES NOW Misty Scott, (for this subsection, "Plaintiff"), by and through her attorneys Morgan Scroggins and the Scroggins Law Office, Ltd, and in support of Count X asserted against the Defendants jointly, states the following:

215. Plaintiff incorporates paragraphs 1-64, stated above, as if fully restated and realleged herein.

216. Defendant's conduct, as described herein, rose beyond mere negligence to the level of willful and wanton misconduct, in that Norfolk Southern's acts and omissions demonstrated a conscious disregard for and utter indifference to the safety and welfare of S.M., X.G., and other pedestrians known to be crossing the Rail Yard.

217. Specifically, Defendants' willful and wanton misconduct consisted of one or more of the following:

a. Defendants had actual knowledge, through its surveillance cameras and railroad police, that members of the public — including children — regularly crossed the Rail Yard, yet took no meaningful action to prevent such crossings or to make them safe;

b. Defendants deliberately closed or permitted the closure of alternative pedestrian crossings located to the north and south of the Rail Yard, knowing that such closures would force pedestrians, including children, to cross through the Rail Yard, while simultaneously failing to provide any safe alternative;

c. Defendants caused, or permitted its agents to cause, the train to move suddenly and without warning at a time when its camera system and police personnel knew, or in the exercise of any reasonable observation would have known, that members of the public were present on, near, or between the stationary cars;

d. Despite actual knowledge of recurring pedestrian crossings, Defendants failed over an extended period of time to erect any barrier, fence, gate, or other device to prevent such crossings, and failed to post warnings adequate to protect known crossing pedestrians from train movements;

e. Defendants maintained and permitted the existence of the brightly painted stairway on the southern bank of the tracks, which constituted an affirmative facilitation of pedestrian crossings, while simultaneously operating trains without adequate warnings or safety protocols to protect persons making such crossings.

218. As a direct and proximate result of Norfolk Southern's willful and wanton conduct, Misty Scott suffered psychological injury including Post Traumatic Stress Disorder as described above.

Page 36 of 37

WHEREFORE, Plaintiff Misty Scott, requests this Honorable Court:

JJ.  GRANT JUDGMENT regarding Count X AGAINST Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of this action.

KK. GRANT Punitive damages against Defendants in excess of $100,000.

LL.  Order other such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of 12 on all counts so triable.

/s/ Morgan Scroggins #6202541
Scroggins Law Office Ltd.
1506 Johnson Rd. Ste 200
Granite City, Illinois 62040
618/876-5300
618/876-5135 (f)

***EFILED***
Case Number 2026LA000491
Date: 4/2/2026 1:51 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| S.M. by and through )<br>her next best friend, MISTY SCOTT; )<br>MISTY SCOTT and; X.G. by and through her )<br>next best friend, MISTY SCOTT )<br>    Plaintiffs, )<br>     )<br>v. )<br>NORFOLK SOUTHERN RAILWAY COMPANY )<br>And NORFOLK SOUTHERN CORPORATION; )<br>    Defendants )| 2026LA000491<br><br>Case No. 26 |

## AFFIDAVIT

I, Phillip Baldwin, hereby state, under oath, that I have reviewed the aforementioned lawsuit and that I consider the injuries and damages sustained by the Plaintiffs support an award greater than Fifty Thousand Dollars.

FURTHER AFFIANT SAITH NAUGHT.

_____
Phillip Baldwin

SUBSCRIBED AND SWORN to before me this 3st day March,

2026.

_____
Notary Public

OFFICIAL SEAL
KELLY HAXTON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 01/28/2027

***EFILED***
Case Number 2026LA000491
Date: 4/2/2026 1:51 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| S.M. by and through<br>her next best friend, MISTY SCOTT;<br>MISTY SCOTT and; X.G. by and through her<br>next best friend, MISTY SCOTT<br>　　Plaintiffs,<br>v.<br>NORFOLK SOUTHERN RAILWAY COMPANY<br>And NORFOLK SOUTHERN CORPORATION;<br>　　Defendants | )<br>)<br>)　　2026LA000491<br>)<br>)<br>)　　Case No. 26<br>)<br>)<br>) |

## ENTRY OF APPEARANCE

Comes now Morgan Scroggins of Scroggins Law Office Ltd. and hereby enters his

appearance on behalf of the Plaintiffs and requests that all future pleadings and correspondence

be forward to the address below.

/s/ Morgan Scroggins #6202541
Scroggins Law Office Ltd.
1506 Johnson Road, Suite 200
Granite City, Illinois 62040
(618) 876-5300
(618) 876-5135 (fax)
clientsupport@scrogginslawoffice.com

***EFILED***
Case Number 2026LA000491
Date: 4/2/2026 1:51 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| S.M. by and through | ) | |
| her next best friend, MISTY SCOTT; | ) | |
| MISTY SCOTT and; X.G. by and through her | ) | 2026LA000491 |
| next best friend, MISTY SCOTT | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 26 |
| NORFOLK SOUTHERN RAILWAY COMPANY | ) | |
| And NORFOLK SOUTHERN CORPORATION; | ) | |
| Defendants | ) | |

## ENTRY OF APPEARANCE

Comes now Phillip Baldwin of Scroggins Law Office Ltd. and hereby enters his

appearance on behalf of the Plaintiffs and requests that all future pleadings and correspondence

be forward to the address below.

/s/ Phillip Baldwin #6320255
Scroggins Law Office Ltd.
1506 Johnson Road, Suite 200
Granite City, Illinois 62040
(618) 876-5300
(618) 876-5135 (fax)
clientsupport@scrogginslawoffice.com